

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS
## AUSTIN

GROVER SELLERS
ATTORNEY GENERAL

Honorable Robert A. Manire, Executive Officer
State Board for Vocational Education
P. O. Drawer B. B., Capitol Station
Austin, Texas

Dear Mr. Manire:

Opinion No. O-6731
Re: Validity and construction of
Senate Bill No. 120, 49th
Legislature.

Your request for an opinion from this Department
is as follows:

"Senate Bill #120, 49th Legislature, which is
an appropriation bill for Vocational Education con-
tains the following section:

"'There is hereby appropriated the sum
of $2500.00 State's Part for the State Board
of Education to employ an Executive Officer.'
(State Board of Education corrected to State
Board for Vocational Education by H.B. No.
110, shown in House Journal May 30, 1945,
Senate Journal May 31, 1945.)

"In view of the above mentioned facts, I would like
to submit for your consideration and opinion the follow-
ing questions:

"1. Was it the intent of the Legislature to
imply that the term 'Executive Officer' could be
construed to mean Executive Officer and/of State
Director of Vocational Education?

"2. Since the sum of $2500.00 is included in
the appropriation act, with no mention made as to
whether this sum is for each year of the biennium
or for the entire biennium, was it the intent of
the Legislature to make $2500.00 available

for the entire biennium or a sum of $1250.00
for each year of the biennium.

"3.  Since Senate Bill #120 is an appropria-
tion act by title and substance and since this
bill appears to contain more than one subject,
namely, that of appropriation of funds and creat-
ing or recognizing the position of Executive Of-
ficer, could that portion of the bill erecting
the Executive Officer's position be in agreement
with thatpar t of the Constitution that requires
no bill shall contain more than one subject?"

We shall answer your numbered questions in their in-
verse order, that being the logical way to reply, we think.

Section 35 of Article III of the Constitution de
clares:

"No bill (except general appropriation bills,
which may embrace the various subjects and accounts,
for and on account of which moneys are appropriated)
shall contain more than one subject, which shall be
expressed in its title.  But if any subject shall
be embraced in an act, which shall not be expressed
in the title, such act shall be void only as to so
much thereof as shall not be so expressed."

Senate Bill No. 120 in its entirety is as follows:

"S.B. No. 120

"AN ACT

appropriating the sum of One Million Two Hundred Fifty-nine
Thousand Fifty-five and 00/100 ($1,259,055.00) Dollars
per year or so much thereof as may be necessary, for the
next biennium beginning September 1, 1945, and ending August
31, 1947, from the General Revenue Fund for the purpose of
promoting public school interests and assisting local dis-
tricts in the teaching of vocational agriculture, home eco-
nomics, trades and industries, distributive education and
vocational rehabilitation of disabled persons according to
the Federal laws governing vocational education, all which shall

be matched by Federal funds; providing for the administration, attaching conditions, regulations, and limitations relative thereto; making various allocations of said appropriations; authorizing aid to schools in accordance with the conditions specified herein; providing all costs of administering funds named in this Act shall be paid out of moneys appropriated in this Act under the authority of the State Board for Vocational Education; providing for acceptance and disbursement of all Federal moneys as may be made available to the State Board for Vocational Education in accordance with plans acceptable to the Federal agency in charge of such funds; defining the powers of the State Board for Vocational Education; repealing all laws or parts of laws in conflict herewith; and declaring an emergency.

"Section 1. For the purpose of promoting public school interests and matching Federal funds, there is hereby appropriated out of the General Revenue Fund One Million Two Hundred Fifty-nine Thousand Fifty-five and 00/100 ($1,259,055.00) Dollars, or so much thereof as may be necessary for the school year ending August 31, 1946, and One Million Two Hundred Fifty-nine Thousand Fifty-five and 00.100 ($1,259,055.00) Dollars, or so much thereof, as may be necessary for the school year ending August 31, 1947, to be allotted and expended by the State Board of Vocational Education.

"Sec. 2. The funds appropriated in this Act shall be expended in accordance with all Federal laws and regulations governing vocational education, providing that in schools where equalization funds are received, vocational agriculture, home economics, and trades and industries and distributive education shall comply with such regulations as set forth in the equalization bill.

"Sec. 3. Provided that vocational agriculture, home economics and trades and industries and distributive education teachers may be paid for twelve (12) months where the superintendent of the school in which they are employed has certified to the State Board for Vocational Education that such teacher is actually engaged in teaching this work twelve (12) months.

"Sec. 4. The State Board for Vocational Education, through its Executive Officer, is hereby authorized to receive and disburse in accordance with plans acceptable to the responsible Federal agency, all Federal moneys that are made available to the State of Texas for such purposes as training personnel for national defense industries, and for such other activities as come under the authority of the State Board for Vocational Education.

"Sec. 5. There is hereby allocated and set aside the following amounts for the purposes indicated below:

"Vocational Agriculture:
Four Hundred Ten Thousand Four Hundred Twenty-five Dollars....................................$ 410,425.00

"Vocational Home Economies:
Three Hundred Twenty-one Thousand Seven Hundred Fifty-six Dollars............................$ 321,756.00

"Trades and Industries:
One Hundred Fifty-five Thousand Dollars.........................$ 155,000.00

"Distributive Education:
Fifty-five Thousand Dollars......................................$ 55,000.00

"Vocational Rehabilitation:
One Hundred Fifty-four Thousand Three Hundred Seventy-four Dollars............................$ 154,374.00

"Rehabilitation for Crippled children to be expended by the Department of Health; One Hundred Sixty-two Thousand Five Hundred Dollars........111.............$ 162,500.00

"Provided unexpended balances remaining in the funds herein appropriatef for vocational services may be re-allocated with the consent of each of the directors and with the approval of the Executive Officer.

"The proper officer or officers of any State department, bureaus, or divisions of State agencies are hereby authorized to make application for and accept any gifts, grants, or allotments from the United States government to be used an State Cooperative and other Federal projects and programs in Texas, including construction of public buildings, repairs and improvements. Any of such Federal funds as may be deposited in the State Treasury are hereby appropriated to the specific purpose authorized by the Federal Government, and subject to the limitations placed in this Act. There is hereby appropriated the sum of Two Thousand Five Hundred Dollars ($2,500.00) State's part or so much thereof as is necessary for the State Board for Vocational Education to employ an executive officer; and there is hereby appropriated the sum of One Thousand Four Hundred Fifty Dollars ($1,450.00) State's part for the State Board for Vocational Education, to pay director, Distributive Education.

"Sec. 6. All laws and parts of laws in conflict herewith are hereby expressly repealed.

"Sec. 7. The fact that many schools in this State are desirous of having the services of vocational teachers mentioned in this Act, and the further fact that if the schools receive such services it is absolutely necessary that this appropriation be passed, create an emergency and an imperative public necessity that the Constitutional Rule requiring bills to be read on three several days in each House be suspended, and the same is hereby suspended, and this Act shall take effect and be in force from and after its passage, and it is so enacted."

The bill undoubtedly is shown in its body to be an appropriation bill, within the meaning of the Constitution above quoted, and this subject is clearly stated in the title to the bill. It only remains to be determined whether or not any other subject is contained in the title, or is dealt with in the body of the bill.

We have carefully examined the title, and the body of the bill section by section, and find nothing therein contained that is not germane, or fairly and reasonably incidental, to

such an appropriation bill, unless possibly it is found in Section 5 as posed by your question 1, which we shall specifically answer later herein.

So that, your question No. 3 is answered to the effect that Senate Bill No.120 is not subject to the vice of unconstitutionality, as condemned in Section 35 of Article III of the Constitution.

Section 6 of Article VIII of the Constitution declares:

"No money shall be drawn from the treasury but in pursuance of specific appropriations made by law; * * *."

The specificness required necessarily contemplates the purpose and amount, or at least includes these elements. The Constitution does not necessarily require an express specificness in these respects; such specifiness may be implied, where the language clearly indicates such purpose or amount with sufficient definitions to serve the purpose intended by the framers of the Constitution. Thus, an appropriation of all sums of money coming into the hands of a department from fees, or other lawful sources whatever for a given period would be sufficiently definite as to amount, and likewise for an appropriation of a lump sum to a department or institution for the various purposes of the department or institution would be sufficiently specific as to purpose.

The language of Section 5, "There is hereby appropriated the sum of Two Thousand Five Hundred Dollars ($2500.00) State's part or so much thereof as is necessary for the State Board for Vocational Education to employ an executive officer", meets every requirement of the Constitution for specificness of appropriation, both as to amount and purpose, but the language likewise carries the legislative limitations upon both the amount and the purpose. The Act contains nothing further from which a reasonable implication could be deduced that the sum appropriated was intended to be for each of the two years of the approaching biennium. It may be that the Legislature intended to appropriate $2500.00 for each respective year of the biennium, but it has not done so, and mere intention without such actual appropriation in apt words cannot create law. This answers your second question.

We held in our Opinion No. O-6458, addressed to Honorable J. C. Minkert, County Attorney Brazos County, Bryan, Texas, that the executive officer mentioned in Section 5 of the Act, for whom an appropriation was made, was under the very terms of

the Act itself an employee of the State Board for Vocational Education, and not an officer.

We now further hold in this connection that Senate Bill No 120 did not by legislative fiat create the position of such executive officer as an employee.

Under Section 44 of Article III of the Constitution, no appropriation of moneys out of the treasury may be made by the Legislature except in pursuance of aliability created by or under a pre-existing law. This means a law that was in existence at the very time the appropriation was made. The pre-existing law necessary to support an appropriation, however, may itself exist by reason of necessary implication. That is necessarily implied in a constitution or statute is as much a part of the law as if the same had been expressly contained therein.

The pre-existing law authorizing the appropriation under consideration is the law creating the State Board for Vocational Education. The State Board for Vocational Education is a governmental instrumentality, an aritificial person, which can function only through the proper and necessary employees. Such instrumentality could not perform its governmental functions without employees. That it should have them is implicit in the creative provisions of the law. This rule of construction is exemplified in all the appropriations for all the departments, institutions, offices and agencies of the Government, wherein from the earliest times, in unbroken sequence, appropriations have been made for the payment of employees, repairs, maintenance, and the like incidental purposes. One does not seek to find and express statute authorizing the appropriation of money by the Legislature to pay the compensation of such items as the compensation for employees, the cost of repairs, improvements and maintenance, the supplies, postage, and such other like things necessary to the carrying on of the governmental function of any department, institution, commission, board, office, or authorized activity of the State.

The position of executive officer, therefore, not being an office but a mere appointment of any employee necessary in the administration of the affairs of the State Board for Vocational Education, the item of appropriation therefor

is authorized by pre-existing law.

Speaking specifically, the Legislature had no intention -- either express or implied -- to define the duties of such appointee. A distinguishing feature between an "officer" and an "employee" is that the law defines the duties of an officer, whereas the employing board or authority prescribes the duties of any employee. The term "executive officer" is merely a means of identifying the position for which an appropriation is made. It can make no differnece what the Legislature calls such position, neither can it make any difference how the employing board denominates it. It is the identity of the position that is material. The Board itself defines the duties of its executive officer when he is once employed. Of course, such duties must pertain to the statutory affairs of the board of which he is an employee. This answers your first question.

Very truly yours,

ATTORNEY GENERAL OF TEXAS

By

Ocie Speer (S)
Assistant

OS:ER:bg

APPROVED AUG.3, 1945
Carlos C. Ashley (S)
FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED OPINION COMMITTEE
By GWB chairman